UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SHANE GRATTAN,

                                    Petitioner,

v.

JOHN SUTTON, Warden,

                                    Respondent.

Case No.: 3:17-cv-01523-GPC-PCL

**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

     Petitioner Shane Grattan ("Petitioner" or "Grattan"), proceeding *pro se*, filed a petition for writ of habeas corpus ("petition") challenging his state court conviction of first degree murder. (Dkt. No. 1.) On April 20, 2018, Magistrate Judge Peter C. Lewis filed a Report and Recommendation ("Report") that the petition be denied. Petitioner did not file an objection. After a thorough review of the petition, answer, state court record, and the applicable law, the Court adopts the Report and DENIES the petition.

### Factual Background

     This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1)*; see also Parle v. Fraley*, 506 U.S. 20,

1

35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  The following facts are taken from the unpublished California Court of Appeal opinion, affirming Petitioner's conviction filed on January 19, 2016.  (ECF No. 12-56 at 3-8, Lodgment 9.)

A.    *The People's Evidence*

1.  *Grattan and the victim*

Grattan lived in his van. He frequently parked the van in a parking lot near a marina on Harbor Drive (Harbor Drive parking lot) throughout January 2012, including during the night and early morning hours of January 18, 2012 to January 19, 2012, when the murder was committed.

The victim, Darrin Joseph, had been using a wheelchair for several months prior to the murder. Joseph checked into a hotel on January 4, 2012, and had paid for a room through January 11. On January 12, Joseph did not have money to pay for a room.

2.    *The events preceding the murder*

On the evening of January 18, at approximately 8:45 p.m., David Sommers parked his car in the Harbor Drive parking lot. Sommers saw a wheelchair next to Grattan's van and noticed that the van doors were open. Sommers could hear voices coming from inside the van.

At approximately 9:00 p.m. that night, another man, Robert Foes, parked his van in the Harbor Drive parking lot near Grattan's van, intending to sleep in his van that night. Foes also saw the wheelchair next to Grattan's van. In addition, Foes saw a bicycle leaning against the front of Grattan's van. As he was falling sleep [sic] at approximately 9:00 to 9:30 p.m., Foes heard two men shouting. One of the men said something about going back to get his ".45" and the other responded, "It better be loaded or I'll get my .45."

The jury also heard the preliminary hearing testimony of Charles Ketring, whom the trial court found was legally unavailable to testify at trial. Ketring was sleeping in his van in the Harbor Drive parking lot on the night

2

of the murder. At approximately 11:00 or 11:30, Ketring was awakened by an argument. Ketring looked out of his van and saw Grattan get into Grattan's van. Ketring then heard banging from inside Grattan's van.

### 3. *Daniel Statler's testimony*

Daniel Statler was homeless. He stayed in the marina near the Harbor Drive parking lot and used his bicycle for transportation. One evening in January 2012,[1] Statler met Grattan at the marina. Statler helped Grattan clean up Grattan's van and then spent the night in the van, before leaving the next morning.

The next evening, Statler returned to Grattan's van at about 8:00 p.m. There was another person there, a white male in his mid-50s with white or gray hair.[2] Grattan and the man told Statler that the man had just purchased Grattan's van. Grattan left, and the man told Statler that he was sorry that he had bought the van because he was under the impression that Statler wanted to buy it. The man had some jewelry that he was trying to sell and asked Statler whether he knew anyone who would want to buy the jewelry. Statler told the man that he could possibly help the man sell the jewelry. Grattan returned to the van and became angry. According to Statler, Grattan thought that Statler was trying to steal his friend. Statler believed there might be a romantic relationship between Grattan and the man.[3]

Statler stated that Grattan yelled at him and told him to "'get the fuck'" out of his van and to leave. Statler tried to calm Grattan down and said he did not want any problems. Statler got on his bicycle and left the area.

### 4. *The discovery of the body*

Sandra Sawler and her boyfriend, Darren Virgo, went to the marina

---

[1] On appeal, the People contended that this was the evening prior to the murder. Statler did not testify as to the dates on which he interacted with Grattan.
[2] During a police interview, Statler identified Joseph as the other man he saw in the van.
[3] Joseph's mother testified that Joseph was gay.

3

next to the Harbor Drive parking lot on the morning of January 19 at approximately 7:30 a.m. in order to have coffee and go fishing. At approximately 7:40 a.m., as Sawler was returning from getting a sweatshirt from her truck, she saw Joseph's body in some bushes. Sawler returned to Virgo and told him that she thought she had seen a dead body. Virgo went back to the bushes with Sawler, and the two saw Joseph's body.

Sawler and Virgo saw Grattan's van parked nearby, and approached it. Sawler and Virgo saw Grattan in the rear of the van. Virgo asked Grattan, "'Hey, do you know you're sleeping ten feet from a dead guy?'" Grattan pointed toward the bushes where Joseph's body was, and said, "'Over there?'" Virgo responded, "'Yeah.'" Grattan asked Virgo whether he had called the police, and Virgo told him that he had not. Grattan said that he would call the police. Grattan then asked Sawler and Virgo whether they were going to wait for the police, and they responded in the affirmative.

Sawler and Virgo walked away from the van. Within seconds, Grattan left his van and walked out of Sawler and Virgo's view.[4] At approximately 8:27 a.m., Virgo called the police.

5. *Video evidence*

Police recovered video surveillance footage from a total of twelve video cameras placed around the Harbor Drive parking lot and surrounding area from the night and early morning hours of January 18 and 19th. Forensic video expert Grant Fredericks testified concerning the images that could be seen on the surveillance videos.

At approximately 9:18 p.m.,[5] two individuals were near Grattan's van, one of whom was on a bicycle. The cyclist rode away and was not seen again. The other individual got into Grattan's van. At 1:05 a.m., an object,

---

[4] At trial, Sawler and Virgo both testified that after initially speaking with Grattan, they waited for a while, and then returned to his van when no police arrived at the scene. Sawler and Virgo also both testified that when they returned, Grattan again told them that he would call the police, before walking away. However, video surveillance revealed that Sawler and Virgo interacted only once with Grattan, and that Grattan walked away within seconds of their initial encounter.

[5] Those parties stipulated that the time stamp from the videos was approximately one hour ahead of the actual time. We refer to the actual time in the text, as estimated from the time stamps on the videos.

consistent with a human in a wheelchair, moved away from the van and then returned to the van at 1:08 a.m.

At 2:49 a.m., an individual with a blanket draped over his body, walked away from the passenger's rear side of Grattan's van and then returned to the van. At 2:52 a.m., the same individual walked away from the passenger's side of Grattans's van to the front of the van, and bent forward near the grille area of the van. At 3:13 a.m., an individual walked away from the front of the van and around a nearby car. Approximately two minutes later, that individual pushed an empty wheelchair about 200 feet away from the van, in the parking lot. The individual then returned to the van's passenger side.

Between 3:22 a.m. and 4:09 a.m., an individual made several trips from Grattan's van toward some nearby washrooms and the bay, and then returned to the van. During a couple of those trips, the individual was carrying objects, and on one occasion, at approximately 3:41 a.m., the individual appeared to be dragging something from the van.

At 4:18 a.m., an individual walked away from Grattan's van, stopped at a garbage container and then walked out of view of the camera at 4:21 a.m. No activity occurred near the van for approximately the next 50 minutes. At approximately 5:10 a.m., an individual who appeared to be wearing the same clothing as the individual who left the van at 4:18 went to the van.[6] No further activity occurred near the van, until Sawler and Virgo approached the van at approximately 7:50 a.m.

6.      *The victim's injuries and cause of death*

Paramedics arrived at the scene and determined that the victim, later identified as Joseph, was dead. The medical examiner determined that Joseph died of blunt force trauma to his head, neck and chest. Joseph had numerous broken bones, bruises, and lacerations throughout his entire body.

---

[6] Fredericks testified that the individual appeared to be wearing a "hoodie with light-area fabric underneath . . . "

5

### 7. *Forensic evidence*

Drag marks and bloodstains demonstrated that Joseph had been dragged from the van a distance of approximately 22 feet to the bushes where his body was discovered. Police found blood and blood spatter throughout the van, as well as evidence that someone had attempted to clean the interior of the van. A sweatshirt and a shoe found in the van contained DNA that matched both Joseph and Grattan. Police also found Grattan's DNA in scrapings under Joseph's fingernails. Numerous bloodstains located in the interior of the van and items in the van contained Joseph's DNA.

### 8. *Grattan's arrest*

When police arrested Grattan a few weeks after the murder, he had a newspaper article in his backpack about the murder. The article indicated that the police were looking for Grattan.

### B. *The defense*

Two character witnesses testified that they believed that Grattan was nonviolent.

The defense presented evidence that Ketring had interfered with the investigation in various ways. . . . The defense also presented evidence concerning the People's unsuccessful efforts to ensure that Ketring would be available to testify at trial. In addition, the defense presented photographs of the Harbor Drive parking lot in an attempt to demonstrate that Ketring would have been unable to see Grattan's van, given the locations of Ketring's van and Grattan's van on the night of the murder.

(Dkt. No. 12-56, Lodgment 9 at 3-8[7].)

## Procedural History

Petitioner was arrested on February 8, 2012 and subsequently arraigned on charges for first degree murder on February 10, 2012. (Dkt. No. 12-46, Lodgment 5-1 at 10-11.) After a jury trial, Petitioner was found guilty of first degree murder and sentenced to 25

---

[7] Page numbers are based on CM/ECF pagination.

years to life. (Dkt. No. 12-17, Lodgment 1-17 at 1508.)

After receiving his sentence, Petitioner timely appealed his conviction. (Dkt. No. 12-53, Lodgment 6.) This appeal was based on the same five grounds brought in the current petition filed in this Court. (*Id.*) The Court of Appeal rejected all of Petitioner's claims and denied Petitioner's appeal. (Dkt. No. 12-56, Lodgment 9.) Petitioner then filed a petition for review in the California Supreme Court, bringing the same five claims as brought in the Court of Appeal as well as in this Court. (Dkt. No. 12-57, Lodgment 10.) This petition was summarily denied without citation. (Dkt. No. 12-58, Lodgment 11.) Petitioner now has filed a petition for writ of habeas corpus with this Court. (Dkt. No. 1.)

## Discussion

**A      Standard of Review of the Magistrate Judge's Report and Recommendation**

In reviewing a magistrate judge's report and recommendation, a district court "must make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed."); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise"); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, de novo review of a R & R is only required when an objection is made to the R & R") (citing *Reyna-Tapia*, 328 F.3d at 1121); *see also Schmidt v.*

7

*Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (interpreting Ninth Circuit's decision in *Reyna–Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"). Here, no objection was filed by Petitioner. While the Court is not required to review the Report de novo, the Court nonetheless conducts a review.

**B.  Legal Standard on 28 U.S.C. § 2254**

28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended, states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Clearly established federal law, as determined by the Supreme Court, "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Lockyer,*

8

538 U.S. at 71. A state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams*, 529 U.S. at 405-06. "A state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or if it "either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. It is not within the province of federal habeas courts to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A state court need not cite Supreme Court precedent in resolving a habeas corpus claim; "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent, the state court decision will not be deemed contrary to clearly established federal law. *Early v. Packer*, 537 U.S. 3, 8 (2002). Ninth Circuit case law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.'" *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

If the state's highest court does not issue a reasoned decision regarding a habeas petition, as is the case here, the federal court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Y1st v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). Here, because the California Supreme Court summarily denied review, this Court "looks through" to the

9

1   court of appeal's decision in determining whether Petitioner is entitled to habeas relief.

2   *Id.*

3   **C.    Analysis**

4          Petitioner advances five arguments: (1) the trial court's exclusion of a key

5   witness's prior bad acts deprived Petitioner of his right to confrontation and due process;

6   (2) the trial court's exclusion of evidence showing Petitioner's good character deprived

7   Petitioner of his right to due process; (3) the trial court's decision regarding the testimony

8   of an unavailable witness deprived Petitioner of his rights to confrontation and due

9   process; (4) there was insufficient evidence to support Petitioner's conviction for first

10  degree murder; and, (5) the cumulative error presented deprived Petitioner of his rights to

11  due process.  (Dkt. No. 1 at 2.)

12         Respondent argues that Petitioner's claims fail under the AEDPA's "contrary to"

13  and "unreasonable determination" relitigation standards, and that Petitioner has not

14  shown the state court decision was based on an unreasonable determination of the facts of

15  the case.  (Dkt. No. 11 at 2.)

16         **1.    Evidence of Statler's Prior Bad Acts**

17         Petitioner argues that the trial court's exclusion of third party culpability evidence

18  violated his rights to due process and a fair trial within the meaning of the Sixth and

19  Fourteenth Amendments.[8]  (Dkt. No. 1 at 6.)  Specifically, he claims the trial court

20  excluded evidence of Statler's prior bad acts to demonstrate that he committed the crime.

21  Respondent argues that the trial court did not err because the proffered testimony of

22

23  _____

    [8] Petitioner's petition includes a reference to an alleged violation of his right to confrontation.  (Dkt. No.
24  1 at 6.)  However, Statler was present and examined during court proceedings, (Dkt. No. 12-13 at 12),
    and therefore nothing pertaining to this alleged ground for relief suggests Petitioner's right to
25  confrontation was implicated.  *See California v. Green*, 399 U.S. 149, 165 (1970) ("This Court long held
    that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause.")
26  (internal citation omitted).

                                             10

27

28

Statler's prior acts was inadmissible character evidence and more prejudicial than probative.   (Dkt. No. 11-1 at 22-23.)   The court of appeal held that Petitioner's constitutional right to present a complete defense was not violated because the trial court properly applied state evidentiary rules.  (Dkt. No. 12-56, Lodgment 9 at 16.)

Under the Sixth and Fourteenth Amendments, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citation omitted); *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009) (a "defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions, such as evidentiary and procedural rules.") (citation omitted).  In *Nevada v. Jackson*, 569 U.S. 505, 509 (2013), the Supreme Court noted it has only rarely held "that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  Id.  "Evidentiary rules do not violate a defendant's constitutional rights unless they 'infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.'"  *Id.* (quoting *Holmes*, 547 U.S. at 324).  "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  *Id.* at 326.  Even if the exclusion of evidence rises to the level of constitutional error, the erroneous exclusion must have had "a substantial and injurious effect" on the verdict for habeas relief to be granted.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Here, the trial court held a hearing on whether the defense could introduce evidence of Statler's prior bad acts. (Dkt. No. 12-3, Lodgments 1-3.) The trial court concluded that the "evidence of third-party culpability meets the threshold of raising a reasonable doubt as to defendant's guilt as set forth in *People vs. Hall,[9]* so the Court will allow the defense to present to the jury a third-party culpability defense by questioning witnesses and presenting argument to the jury."[10] (*Id.* at 42.) Therefore, the trial court allowed Petitioner to present third party culpability evidence such as crimes of moral turpitude as they bear on Statler's veracity and admitted the August 2005 sale of marijuana, the September 2005 domestic violence case and the August 2006 conviction where he lied to officers about his identity. (*Id.* at 56.) However, the trial court denied Petitioner's request to introduce specific instances of Statler's prior arrests as proof that he committed the crime because the prior incidents did not share "unusual and distinctive features with the acts in this case." (*Id.*) The trial court explained that the prior incidents showed Statler's propensity towards violence and none of the prior instances were similar to a brutal beating death as in the case. (*Id.* at 43.) The court also noted that the prior acts that Statler had a propensity for violence would violate California Evidence Code section 1101.[11] (*Id.* at 43.)

The court of appeal properly applied the legal standard and determined that certain prior bad acts of Statler, that were excluded by the trial court, had no similarity or

---

[9] 41 Cal. 3d 826 (1986).

[10] Prior uncharged misconduct is admissible under California Evidence Code section 1101(b) only when the "uncharged misconduct and the charged offense . . . share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts." <u>People v. Ewoldt</u>, 7 Cal. 4th 380, 403 (1994).

[11] "[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion" but can be used to prove some other fact, such as identity, other than the person's disposition to commit such an act. Cal. Evid. Code § 1101.

common features with the charged offenses at issue.  As such, the court of appeal's decision was neither contrary to, nor involved in an unreasonable application of clearly established law, nor an unreasonable determination of the facts.  *See Bell*, 535 U.S. at 694.  The Court DENIES the petition on this claim.

### 2. Evidence of Petitioner's Good Character

Next, Petitioner argues that he was deprived of "his Fifth, Sixth, and Fourteenth Amendment rights to due process, present evidence on his behalf, and a fair trial" because he was not allowed to admit certain evidence relating to his character and reputation.  (Dkt. No. 1 at 7.)  Respondent disagrees.

The court of appeal upheld the trial court's exclusion of certain character evidence holding that the trial court did not abuse its discretion under state law and did not violate Petitioner's constitutional right to present a defense by limiting his good character evidence.  (Dkt. No. 12-56, Lodgment 9 at 39.)  The court of appeal precluded the defense from presenting evidence that Petitioner was "generous, helpful, polite and courteous" as inadmissible under Evidence Code section 1102, but allowed the defense to present evidence that he was "peaceful and nonviolent."  (Dkt. No. 12-56, Lodgment 9 at 37.)

Federal habeas relief is not available for alleged errors of state law.  E*stelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983) ("The Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.").  A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.").

As discussed, under the Sixth and Fourteenth amendments, it is well settled that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane*, 476 U.S. at 690 (citation omitted). Nevertheless, "'[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions,' such as evidentiary and procedural rules." *Moses*, 555 F.3d at 757 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Thus, the exclusion of defense evidence is error only if it renders the state proceeding so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 67.

As the court of appeal's decision pointed out, the trial court permitted Petitioner to present evidence regarding character traits that were relevant in determining whether he had committed the charged offense, i.e., his character for peacefulness and nonviolence. (Dkt. No. 12-56, Lodgment 9 at 38.) The evidence that the trial court excluded, Petitioner's character for generosity, helpfulness, and kindness, was held to be unrelated to the charged crime. Petitioner was permitted to present good character evidence to support his defense and has not demonstrated a due process violation. Accordingly, the court of appeal's decision was neither contrary to, nor involved in an unreasonable application of clearly established law, nor an unreasonable determination of the facts. *See Bell*, 535 U.S. at 694. Accordingly, Petitioner's claim for relief upon this ground is DENIED.

### 3. Ketring's Testimony

Petitioner argues his Fifth, Sixth, and Fourteenth Amendment rights to confrontation due process and fair trial were violated when the trial court admitted the preliminary hearing testimony of Ketring, an unavailable witness at trial, and admitted Ketring's statements to law enforcement officer. (Dkt. No. 1 at 8.) Respondent argues that there was no error in using the preliminary testimony of an unavailable witness at trial. (Dkt. No. 11-1 at 30-44.)

The court of appeal concluded that the prosecution presented considerable evidence concerning good faith efforts to locate Ketring and his testimony was corroborated by other witnesses as well as by the physical evidence linking Petitioner to the crime. (Dkt. No. 12-56, Lodgment 9 at 26-27.)

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The confrontation clause of the Sixth Amendment, made applicable to state criminal prosecutions through the Fourteenth Amendment, provides a criminal defendant with the right to face those who testify against him and the right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *Pointer v. Texas*, 380 U.S. 400, 401 (1965). The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

A prosecution must show that it made a good-faith effort to locate the witness and compel him or her to appear at trial. *Hardy v. Cross*, 565 U.S. 65, 69-70 (2011) (citing *Barber v. Page*, 390 U.S. 719, 724-25 (1968)). The prosecution's good faith efforts to obtain a witness's appearance at trial is determined under a reasonableness standard. *Id.* at 71-72 (Sixth Amendment does not require that the prosecution exhaust every avenue of inquiry and under § 2254, a federal court may not overturn a state court's decision on the issue of unavailability merely because the federal court identifies additional steps that could have been taken).

Here, the court of appeal reasonably concluded that the prosecution made a good faith effort to locate Ketring. (Dkt. No. 12-56, Lodgment 9 at 17-19 (detailing prosecution's efforts to locate Ketring).) Despite the fact that Ketring was unable to be

15

located, the prosecution nonetheless fulfilled their burden. *See Hardy*, 565 U.S. at 71-72 (explaining that the prosecution need not "exhaust every avenue of inquiry" to establish good faith effort to locate a witness). Second, it is not disputed that Ketring was cross-examined by defense counsel. The trial court found that Petitioner was not restrained by the prosecution during cross-examination and was not prevented from exploring areas of interest. (Dkt. No. 12-8, Lodgment 1-8 at 255.) When one is unconstrained while preforming cross-examination, as is the case here, courts generally have found that no confrontation clause violation occurs. *See Delgadillo v. Woodford*, 527 F.3d 919, 926 (9th Cir. 2008); *Glenn v. Dallman*, 635 F.2d 1183, 1186–1187 (6th Cir. 1980) (finding eyewitness's identification testimony at preliminary hearing admissible against defendant at trial even though defendant declined to thoroughly cross-examine witness). As one district court noted, the "Supreme Court has never held that a criminal defendant who is afforded an opportunity to cross-examine a witness at a preliminary hearing is denied his right to confrontation when that witness becomes unavailable and her preliminary hearing testimony is read to the jury." <u>Silva v. Montgomery</u>, No. CV 14-3188-CJC(RZ), 2015 WL 1926216, at \*6 (C.D. Cal. Mar. 13, 2015) (citing <u>Al-Timimi v. Jackson</u>, 379 Fed. App'x 435, 439 (6th Cir. 2010)).

Petitioner claims he should have been given the opportunity to cross-examine Ketring about other issues but he does not claim he was prevented from doing so at the preliminary hearing. Accordingly, the Court concludes that the court of appeal's decision was not contrary to, nor an unreasonable application of, clearly established law. *See Bell*, 535 U.S. at 694.

Second, Petitioner argues Ketring's statements made to law enforcement[12] were

---

[12] At trial, the jury heard an audio recording of a police detective's interview with Ketring a few hours after the police discovered the body. (Dkt. No. 12-56, Lodgment 9 at 22.) Ketring described that he was

incorrectly admitted by the trial court as prior consistent statements.  (Dkt. No. 1 at 8.)  On this issue, the court of appeal assumed that the trial court erred and held that any error in admitting evidence of Ketring's statements to law enforcement officers was harmless.  The court explained that the erroneously admitted statements were not substantive evidence of Petitioner's guilt but were statements consistent with Ketring's preliminary hearing testimony which was subject to cross-examination and was properly admitted.  (Dkt. No. 12-56 Lodgment 9 at 31-32.)  Moreover, the erroneously admitted statements were not likely to have had any affect to bolster Ketring's credibility.  (*Id.*)  Furthermore, Ketring was not the only person who placed Petitioner at the scene of the crime.  (*Id.* at 32-33.)

In the context of a habeas petition, federal courts review a state court decision for harmless error to determine if the error had "a substantial and injurious effect or influence in determining the jury's verdict*." Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); "If a habeas court is left with 'grave doubt' about whether a constitutional error substantially influenced the verdict, then the error was not harmless."  *Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir. 2004). In general, the inquiry into whether the constitutionally erroneous introduction of a piece of evidence had a substantial and injurious effect is guided by several factors: "the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case."  *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011).

Here, Ketring's statements to investigators was consistent and cumulative of his

---

awakened the previous night by a yelling sound and saw Grattan getting into his van and hearing banging sounds coming from it.  (Id.)  He also said he heard more banging coming from the van the following morning at around 5:00 or 5:30 a.m.  (Id.)  These statements were also made at the preliminary hearing.  (Id.)

preliminary hearing testimony.  Refuting Petitioner's argument that Ketring's testimony was prejudicial because he was the only person who placed him at the scene of the crime, the court of appeal explained that other corroborating evidence to support Petitioner's conviction such as Sawler and Virgo placing Grattan in a van that was about 10 feet from the victim, video surveillance evidence as well as DNA evidence from blood in the van matching both Grattan and the victim.  (Dkt. No. 12-56, Lodgment 9 at 32-33.)  Petitioner was also allowed to freely cross-examine Ketring at the preliminary hearing on the same statements.  Thus, the erroneous admission of Ketring's statements to investigators did not have a substantial and injurious effect on the jury's verdict.

Accordingly, the court of appeal's decision was neither contrary to, nor involved in an unreasonable application of clearly established law, nor an unreasonable determination of the facts.  *See Bell*, 535 U.S. at 694.  The Court DENIES the petition on this claim.

### 4.    Insufficiency of Evidence

Petitioner contends there was insufficient evidence to show premeditation or deliberation, or alternatively, sadistic purpose to support a first degree murder conviction.  (Dkt. No. 1 at 9.)  Respondent argues the evidence was sufficient to convict Petitioner.  (Dkt. No. 9-2 at 45-49.)

The court of appeal concluded that "there is sufficient evidence in the record to support the jury's finding that the murder was of the first degree."  (Dkt. No. 12-56, Lodgment 9 at 42-43.)  The state court reviewed the evidence in order to determine whether a rational jury could find premeditation and deliberation, or torture for a sadistic purpose.  (*Id.*)

The due process clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).

18

Thus, a state prisoner who alleges the evidence introduced at trial was insufficient to support the jury's findings, as the Petitioner alleges here, states a cognizable federal habeas claim. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). When evaluating an insufficient evidence issue, this Court inquires as to whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In adjudicating an insufficiency of the evidence claim, a federal habeas court "look[s] to [state] law only to establish the elements of [the crime] and then turn[s] to the federal question of whether the [state court] was objectively unreasonable in concluding that sufficient evidence supported [the conviction]." *Juan H. v. Allen*, 408 F.3d 1262, 1278 n. 14 (9th Cir. 2005). In determining whether the evidence was sufficient, a federal court must follow the California court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Under California law, first degree murder includes murder perpetrated by "torture, or by any other kind of willful, deliberate, and premeditated killing[.]" Cal. Pen. Code § 189. In determining whether a crime was premeditated, courts assess whether the evidence supports an inference that a crime was "the result of preexisting reflection rather than unconsidered or rash impulse." *People v. Hughes*, 27 Cal. 4th 287, 370 (2002) (citation omitted). "Premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against a proposed course of action." *People v. Mayfield*, 14 Cal. 4th 668, 767 (1997) (internal quotations and citation omitted), *cert. denied*, 522 U.S. 839 (1997). "The process of premeditation and deliberation does not require any extended period of time." *Hughes*, 27 Cal. 4th at 371 (citation and quotation marks omitted). Murder by means of torture requires "1) an act or acts causing death that involve a high degree of

probability of death, 2) a causal relationship between the torturous act and death, 3) a willful, deliberate, and premeditated intent to inflict extreme and prolonged pain on a person for the purpose of revenge, extortion, persuasion, or for any other sadistic purpose, and 4) commission of the act or acts with such intent." *People v. Edwards*, 57 Cal. 4th 658, 715-16 (2013). The "'finding of murder-by-torture encompasses the totality of the brutal acts and the circumstances which led to the victim's death. [Citation.] The acts of torture may not be segregated into their constituent elements in order to determine whether any single act by itself caused the death; rather it is the continuum of sadistic violence that constitutes the torture.'" *People v. Jennings*, 50 Cal. 4th 616, 643 (2010). "The jury may infer the intent to inflict extreme pain from the circumstances of the crime, the nature of the killing, and the condition of the body." *Edwards*, 57 Cal. 4th at 716 (quoting *People v. Chatman*, 38 Cal. 4th 344, 390 (2006)).

The court of appeal concluded that a reasonable jury could find that based on the injuries sustained by the victim, the killer beat a disabled victim over a prolonged period of time. (Dkt. No. 12-56, Lodgment 9 at 42.) "The victim's injuries included a lacerated tongue, bruising and scraping of the penis and scrotum, multiple fractured ribs on both sides of the chest, fractured nasal bones, a fractured hyoid bone, and a broken Adam's apple. The victim had bruising, contusions and lacerations over his entire body . . . and his death was not rapid." (Id.) This evidence presented at Petitioner's trial supports a finding that a reasonable juror could conclude that Petitioner killed the victim by means of torture. (Id. at 42-43.)

Therefore, the court of appeal's rejection of the insufficiency of the evidence claim was not contrary to, nor an objectively unreasonable application of, clearly established federal law. *See Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a state court decision rejecting a claim of insufficiency of

the evidence pursuant to 28 U.S.C. § 2254(d)(1) . . . we ask only whether the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of a particular case"). The Court DENIES Petitioner's claim of insufficient evidence to support his conviction.

### 5. Cumulative Error

Finally, Petitioner argues his right to a fair trial was violated given the accumulation of alleged errors made by the trial court. (Dkt. No. 1 at 9.) The Supreme Court has established that the combined effect of multiple trial errors violates due process where it renders the resulting criminal trial fundamentally unfair. *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"). "The cumulative effect of multiple errors can violate due process even when no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle*, 505 F.3d at 927 (citing *Chambers*, 410 U.S. at 290 n.3). As discussed above, the Court, following the court of appeal, assumed that the trial court erred in admitting Ketring's statements made to law enforcement officers, but ultimately held that the error was harmless under *Brecht*. A cumulative error analysis cannot be based on a single error that is harmless. *See United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("if there are no errors or a single error, there can be no cumulative error"); *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997) ("Cumulative-error analysis applies where there are two or more actual errors."); *Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991) ("in a cumulative error analysis no single error is ground enough to grant the writ"). Therefore, Petitioner's claim of cumulative error is DENIED.

/ / / /

/ / / /

21

**D.      Certificate of Appealability**

Rule 11 of the Federal Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A certificate of appealability "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. *See id.* Accordingly, the Court DENIES a certificate of appealability.

## Conclusion

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and Recommendation and DENIES the petition for writ of habeas corpus and DENIES a certificate of appealability.

IT IS SO ORDERED.

Dated:  December 17, 2018

Hon. Gonzalo P. Curiel
United States District Judge